**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

                                      Case No. 11-11976

v.                                  Hon. Lawrence P. Zatkoff

CITIZENS REPUBLIC BANCORP, INC.,
and CITIZENS BANK

      Defendants.

                                      /

## <u>ORDER</u>

This matter is before the Court on Plaintiff's Motion for Entry of Proposed Agreed Order [dkt 6]. The parties have fully briefed the motion. The Court, however, finds that its concerns, as expressed in its May 10, 2011, Order, declining to enter the proposed "Agreed Order" in its then submitted form, have not been addressed in Plaintiff's Motion, Defendant's response, or Plaintiff's reply to Defendant's response. Therefore, the parties are ORDERED to submit an amended Agreed Order for the Court's review.

For further clarification of the May 10, 2011, Order, and guidance to the parties, the Court notes the following specific deficiencies that must be rectified before the Court reconsiders whether entry of an amended "Agreed Order" is fair, reasonable, and consistent with the public interest. *United States v. County of Muskegon*, 298 F.3d 569, 580–81 (6th Cir. 2002) (quoting *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986)). In reviewing the Agreed Order, it (1) fails to define terms; (2) lacks completeness; (3) contains superfluous clauses; (4) lacks clarity; and (5) is void of provisions for the Court to effectively oversee the parties' obligations under the Agreed Order during its anticipated term.

To the extent that the Agreed Order contains **terms that are not defined**, the Court notes such terms at the following pages and paragraphs of the Agreed Order:[1]

1.  Page 2, paragraph 2: use of the terms "majority - black census tracts" and "majority-white consensus tract" without defining the number of tracts and each "tract" at issue in the Agreed Order;[2]

2.  Page 2, paragraph 2: use of the term "targeted neighborhoods" without defining such neighborhoods, including the criteria used to target them, the manner in which they are targeted, and the entity that declares them a "targeted neighborhood";[3]

3.  Page 5, paragraph 2: use of the term "CRA rating" without defining it;

4.  Page 7, paragraph 3: use of the term "ensure" without defining Defendants' duties and responsibilities to "ensure" that loan products are available and marketed in certain areas—*i.e.*, does "ensure" mean guarantee?;

5.  Page 8, paragraph 6: use of the terms "periodic training" and "independent contractors" without defining them and, if the bank is required to hire them, who chooses the "independent contractors";

6.  Page 9, paragraph 8: refers to "Project 14 and the Detroit Works Project" without further defining them or incorporating them into this order;

7.  Page 11, paragraph 14: refers to "other community-based organizations" without specifically identifying each organization involved;

8.  Page 13, paragraph 19: use of the term "unreasonably" in the phrase "will not unreasonably [withhold]" approval without further defining "unreasonably";

9.  Page 13, paragraph 20: use of the term "appropriate remedy" without further defining it;

---

[1]The parties submitted a 22-page Agreed Order without apparently being cognizant of the difficulty in reviewing a document of such length without simple numerical type-face located on each page. As such, the Court has numbered its copy of the Agreed Order, marking the first page as page one and continuing until the final page, page 22.  Additionally, the Court's Order references paragraph numbers, which begin anew on each page at paragraph one, unless that paragraph already contains an identifying mark.

[2]Among other paragraphs, this term is also used on page 12, paragraph 17.

[3]This term is also used on page 9, paragraph 8.

10.  Page 14, paragraph 22: use of the term "targeted advertising" without further defining it;

11.  Page 14, paragraph 22.(a): use of the phrase "print medium specifically directed to African-American readers" without specifically identifying or defining such print medium;

12.  Page 14, paragraph 22.(b): use of the phrase "two African-American-oriented Detroit-area radio stations" without specifically identifying them, and use of the term "radio advertisements" without specifying the length or content of such advertisements;

13.  Page 15, paragraph 22.(d): use of the term "existing customers" without further defining it;

14.  Page 16, paragraphs 26 and 27: use of the terms "special program" and "special financial program" without clarifying if these terms refer to the same program or defining one or both terms;

15.  Page 16, paragraph 28: use of the term "any qualified applicant" without defining or setting out any criteria to establish such an applicant;

16.  Page 18, paragraph 33: refers to Defendants' "partnership" with the City of Detroit without further expanding on it or defining it;

17.  Page 18, paragraph 33: refers to "lending initiatives and outreach programs" without specifically identifying and defining them;

18.  Page 19, paragraph 36: use of the term "objective assessment" without further defining it, including who reviews such an assessment and the actions taken pursuant to a filed assessment; and

19.  Page 20, paragraph 37: use of the term "good cause shown" without further defining it.

To the extent that the Agreed Order contains provisions that **lack completeness**, the Court notes such provisions at the following pages and paragraphs of the Agreed Order:

20.  Page 3, last paragraph: refers to a fair lending examination without explaining why this examination was initiated, including specifically delineating the performance of Republic Bank from the performance of Defendants;

3

21.  Page 7, paragraph 2: use of the phrase "consistent with safe and sound banking practices" without additional provisions on how to arrive at safe and sound banking practices or which person or entity decides whether the actions are consistent with such practices;

22.  Page 8, paragraph 6: refers to "independent contractors" without addressing whether such contractors are limited to those contractors hired by Defendants, assuming it is Defendants that have the right to choose the contractors;

23.  Page 9, paragraph 7: refers to a partnership with the City of Detroit without addressing if the partnership is in writing; if not in writing, then it should state why not, and if in writing, then the terms must be included in the Agreed Order;[4]

24.  Page 9, paragraph 8: refers to exterior improvements, yet, it does not include interior improvements or explain why such improvements are ineligible, and states that the City identifies the "available residents of neighborhoods" in line one, presumably without consulting Defendants, but then continues in line four to suggest that Defendants and the City will identify "existing homeowners in targeted neighborhoods"; further, are "residents", as used in line one, and "existing homeowners", as used in line four, meant to reference the same persons?;

25.  Page 9, paragraph 9: refers to the exclusion of condominiums and cooperatives, yet fails to address why this type of housing has been identified as ineligible;

26.  Pages 9 and 10, paragraph 10: refers to improvements to the exterior of the home without any additional provisions requiring the recipient of the grant to maintain the improvements, at a minimum, during the period that the Agreed Order is in effect, such as entering into enforceable agreements with the recipients or real property covenants to maintain the improvements;

27.  Page 10, paragraph 11: refers to the grant program being administered by the City of Detroit or its designated partner, yet fails to identify any designated partner in the Agreed Order.  In addition, the grant program is not specifically defined in the Agreed Order to eliminate any issues with respect to qualifications for eligibility, zoning issues, contractor approval, and other related issues.  Further, the Court notes that the grant program's structure must be delineated, including an anti-nepotism provision, a provision for receiving contractor approval, and the person or persons responsible for it;

28.  Page 10, paragraph 12: refers to "preapproved projects" and "qualifying project costs" without further detail, specifically with respect to owners undertaking their

---

[4]The Court also notes that the second line of this paragraph has a typographical error.

4

own repairs;

29.  Page 11, paragraph 15: refers to a "Community Development Lender" without clarifying whether this is an employee of Defendants;

30.  Page 12, paragraph 17: refers to a "loan production office", "retail-oriented space", and "visible location", which must be more specifically described, including the size of the proposed office, the number of employees to be employed there, who provides security protection to the office and the employees, and the necessary signage.  Further, there should be an absolute time limit for the Government to respond to Defendants' plan, such as a 20-day or 30-day time frame, a mechanism for resolving disputes between the Government and Defendants with respect to this paragraph, and a provision requiring submission of the proposal to the Court;

31.  Page 13, paragraph 19: refers to the opening of a new branch without establishing a time frame, a time limit within which the Government must respond to Defendants' proposal, or a result if the Government fails to respond, such as automatically granting Defendants' proposal;

32.  Page 15, paragraph 23: refers to four "outreach programs" every year without sufficiently identifying where the program will be held, who the speakers will be, who will be invited, and how long the programs must be;

33.  Page 16, paragraph 24: refers to a counseling program and an outreach seminar without sufficient detail;

34.  Page 16, paragraph 25: refers to Defendants' required advertising without specifying in sufficient detail how the money must be spent and who selects the advertiser and the type of advertising;

35.  Page 17, paragraph 29: fails to specify who is determining a "qualified applicant", which the Court notes seems to be the most significant part of the entire Agreed Order, and fails to delineate an objective criteria that must be met to qualify, *i.e.*, credit score, credit history, etc.;

36.  Page 17, paragraph 31: refers to the standards for underwriting a mortgage without specifying who determines the standards for underwriting a mortgage;

37.  Page 18, paragraph 33: refers to facilitating Defendants' partnership with the City of Detroit without further expanding or defining the partnership; and

38.  Page 21, paragraph 39: refers to whether the Government waives sovereign immunity through the execution of this Agreed Order without sufficient detail or any reasons for refusal to waive sovereign immunity.

5

To the extent that the Agreed Order contains provisions that are **unnecessary or appear to serve no purpose**, the Court notes such provisions at the following pages and paragraphs of the Agreed Order:

39. Page 8, paragraph 5: provides that Defendants shall give the Government 30 days notice of any proposed changes, yet the paragraph contains nothing with respect to whether the Government must approve or not approve of any changes;

40. Pages 14 and 15, paragraphs 22.(c) and 22.(d): refer to advertising options that are optional for Defendants;

41. Page 16, paragraph 28: use of the phrase "may provide one or more of the following" implies that Defendants' financial assistance to "any qualified applicant" is optional, *i.e.*, does this mean that Defendants must provide, or may provide?;

42. Page 17, paragraphs 29 and 30: appear to serve no purpose; and

43. Page 19, paragraph 35: appears to serve no purpose.

To the extent that the Agreed Order contains provisions that **lack clarity**, the Court notes such provisions at the following pages and paragraphs of the Agreed Order:

44. Pages 5 and 6: the order is expressed as an "Agreed Order", yet it appears that Defendants vehemently deny that it violated any laws or unfair practices as alleged by the Government. Even more revealing, the last paragraph on page 6 indicates that Defendants were forced to sign this "Agreed Order", without alternatives, to avoid the cost of litigation against the Government;

45. Page 7, paragraph 1: references an injunction that refers to any act and any aspect of real estate related transactions when it should explicitly enjoin only violations of the applicable law;

46. Page 13, paragraph 21: does this paragraph require Defendants to receive permission from the Government before opening any other branches?;

47. Page 16, paragraphs 26, 27, and 28: it is not clear how the "special program" and "special financing program" are related to the Government's allegations, why the

program requires inclusion in this Agreed Order, how such a program may be forced upon Defendants, whether the Government is going to guarantee loans approved under the "special program", and whether the Court may enter an order that appears to satisfy the elements of extortion under Michigan law;[5] and

48.  Page 21, paragraph 40: fails to sufficiently clarify any current or subsequent provisions of law or orders that may effect the Agreed Order.


Further, the sole purpose for the Court to enter this Agreed Order is to guarantee that the parties continue to adhere to it until its expiration, yet, the Agreed Order is **void of provisions that allow the Court to properly monitor** the parties' future conduct.  For illustrative purposes, the Court notes some provisions that are void of any Court involvement or oversight at the following pages and paragraphs of the Agreed Order:

49.  Page 8, paragraph 5: provides that Defendants shall give the Government 30 days notice of any proposed changes to the CRA Assessment, yet, the paragraph contains nothing with respect to whether the Court receives notification of any proposed changes;

50.  Page 8, paragraph 6: refers to a description of a training plan that must be submitted to the Government within 60 days of the entry of the order without providing for such reports to be filed with the Court; and

---

[5]  Under Michigan law, to be guilty of extortion, one must:

(1) maliciously threaten, orally or by written or printed communication;
(2) either
    (a) to accuse another of any crime or offense or
    (b) to cause injury to the person or property or mother, father, husband, wife or child of another;
(3) with intent thereby either to
    (a) extort money or any pecuniary advantage whatever, or
    (b) compel the person so threatened to do or refrain from doing any act against his will.

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 325 (6th Cir.1999) (citing Mich. Comp. Law § 750.213).

7

51. Pages 12 and 13, paragraph 18: refers to six month reports that are filed with the Government without providing for such reports to be filed with the Court.

Accordingly, Plaintiff is HEREBY ORDERED to submit an amended Agreed Order for the Court's review addressing the above noted deficiencies. Plaintiff must do so within **thirty days** of entry of this Order. Failure to submit an amended Agreed Order may result in Plaintiff's Motion for Entry of Proposed Agreed Order [dkt 6] being denied.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 24, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

8